# Amended Complaint (Pp. 1-20)

Pages
1
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
October 30, 2023
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## * STATEMENT OF FACTS *

① ON 4/8/21 I filed an emergency grievance stating that I was subjected to serious risks to my physical/mental health and safety, that specific policies, laws, etc require ADA rights due to my many ADA qualifications/disabilities and Mental health

② UM santos, acting ADA coordinator, responded determining the situation/conditions "not an emergency", (see exh 6) I gave him a copy of my "request for reasonable ADA accommodations" to submit for his approval (see exh. 8) on 5/12/21

③ ON 5/12/21, UM santos, acting ADA coord., responded to my informal complaint written on 5/3/21 about being denied ADA accommodations and my disabilities being exacerbated as a result. He responded that accommodations requested will be placed as he had reviewed my charts with medical. Df. santos did nothing

④ on or about May 14, 2021 I attempted suicide by stabbing myself multiple times in the stomach and swallowing 6 inch metal ice-pick-like objects; I suffered perforations of my small and large intestines, esophagus, pancreas, spleen, stomach, kidney, etc and had to have my spleen removed and partial pancreas and sections of my large and small bowel. I also had to have a colostomy prosthesis permanently placed and also suffered multiple bouts of sepsis requiring hospitalization for over 2 months. That's the physical side of injuries, as for the mental. I cannot ~~explain~~ expound on the "mental" pain and suffering I felt and continue to suffer from, especially when I am already diagnosed with PTSD and continue to attempt suicide



On 6/29/21 I left MCV Hospital to Sussex 1 State Prison and placed in their SAM unit. I began filing grievances on still being denied ADA accommodations for my visual impairment and mental illness. My grievances were forwarded to WRSP since I was at SX1 on a temporary Medical hold. My grievances were denied intake stating "Request for services" and stating that: "ADA Accommodations per procedure will be provided upon Return to WRSP". I appealed it not being processed and it was denied (as always) as is Regional ombudsman routine. (see Exh. 5).

(5) On or about 8/25/21 I returned to WRSP and refiled grievances for blatant continuation of being denied appealed ADA accommodations. I spoke with operations manager/ADA coordinator Mr. Coughron and warden Davis and CHAP Carico and Ms Townsend to no avail. My grievances were denied intake again by B.J. Ravizee (as is WRSP routine) stating: "after optometrist appointment if accommodations are required they will be met per procedure" (see Exh. 7)

(6) Despite my severe history of mental illness and recent suicide attempts I was removed from S.A.M unit (by defendants Davis, Carico, Coughron, Lovell and Shupard and Moyer prejudicial conspiracy) and placed in the general population among the most violent of Virginia's DOC gang members, the same unit I left from after attempting suicide in May (C-510)contra-indicated by the known Risk having come to fruition previously.

③

⑦ I continued to file numerous grievances complaining of being denied mental health "treatment", appropriate housing and ADA accommodations for my mental/physical disabilities as my conditions are worsening as a result. I complained to Defendant Davis, Robinson, ~~Santos~~, Lovell asking for help. These defendants explain to me that defendant Malone and Madsen "call the shots" and I have "pissed them off" to where they don't want to help me by sending me back to Greensville mental health unit.

⑧ Defendant Davis spoke with me on several of his rounds and told me he simply did not care and did not want to hear my "bitching and crying".

⑨ On 9/26/21 I filed a grievance once again about my vision and mental illness being exacerbated (my vision has regressed and worsened from 20/40 to 20/300 w/o glasses since 2019; and, I have attempted suicide and seriously injured myself 7 times since 2019) by being denied ADA accommodations. I spoke with Defendant Caughron several times on his rounds and he would state that he, "like everyone else here, is sick and tired" of me manipulating the system and "crying wolf". He responded to my complaint (# WRSPINF-01430) on 9/28/21 that his office has not ever received any request for ADA accommodations — a blatant lie to clearly show his indifference and impunity as a corrupt administration. (see exh3)

④

10. ON MULTIPLE OCCASIONS IN C-5 I was assaulted by gang members on January 6, 21, 23, 2022. I had INTEL preserve the video footage of these incidents. I asked Defendants Davis Santos, Carico, Coughron, Lovell, McDuffie personally to protect me and move me into SAM OR TRANSFER me to GRCC-MHU I asked for them to coordinate communication with defendants Robinson, Clarke, Madsen, Meyer and Malone so as to communicate my grievances and needs. I was repeatedly told by them that I've burned any and all bridges and chances.

11. I complained of loss of goodtime due to not being allowed A work assignment as an objective/annual goal and COV law requirement. I was then assigned A job to clean the rec-yard several times A day with A sign posted on my door by UM Santos (SEE EXH 15c). However defendant Church and Carico and Coughron and Davis conspired to not give me credit for work so I do not receive goodtime and did not give me pay/compensation ever despite UM Santos responding to grievances that I would. (SEE EXHS 15a-e)

12. From FEB. 2022 through ~~May 2, 2022~~ UM Stallard, Lt. McCroy and Church, and Davis, then Warden Artrip each conspired to punish me by refusing me work assignments in A-bldg.

13. I again attempted suicide by stabbing A cinch metal

⑤

Ice-pick into my stomach puncturing my kidney on Feb. 1-7, 2022 due to the exacerbation of my serious mental illness and denial of treatment and being assaulted many times targeted by gang members and defendants refused to act. I was hospitalized in I.C.U. @ MCV hospital in Richmond, Va from 2/3 to 2/20/22.

⑭ Only after Rights Behind Bars attorney ORIN NIMNI (EXH.1) wrote to defendants Davis, Malone and Madsen on 2/25/22 did WRSP defendants move me into A-3 S.A.M unit. Where I met with defendants Stallard, McCoy about my grievances, and I was told I would NEVER have A work assignment in A-bldg because of my past and many grievances as they don't like people like me, I was "forced" to "withdraw" my grievances on 4/13/22 threatened with them finding knives in my cell.(SEE EXH.3 a-f)

⑮ On 10/23/23 during rounds I spoke face-to-face with defendants Artrip, Stallard, Coughenour and Soutes. I requested to each of them that I be placed back into S.A.M unit, I asked for ADA accommodations to dim my lights, A bigger TV and watch and for a "care giver" to assist me to read/write, I was told by each defendant that "we don't do ADA at WRSP". I asked each of them to refer me to SUSSEX1 or GREENSVILLE MHU so I can get ADA accommodations and Mental Health treatment



⑥

and each defendant told me that they know I need some
serious therapy but there's nothing for me at WRSP

⑯ Defendant Stallard repeated harassed me about rejoining
him as a defendant in this case

⑰ I asked defendant Santos and Artrip to help me file
criminal charges against defendant Cardwill, Cardwill and
John Doe for assaulting me on 10/2/23. I was told
that I was not assaulted and it was my fault for
not doing as I was told.

⑱ I asked defendant Artrip and Santos if we are supposed
to be receiving "A minimum of 7hrs of out of cell
time/Rec/activities; per OP 440.1 (Privileges By Security Level)
and why are inmates at WRSP only getting 3 or less hours
per day out of cell time? Defendant Artrip and Santos
said "yes that is correct, but being that the top and bottom
tiers come out of cells separately, each tier only get 3 to
3½ hrs each per day; 7hrs combined. I told him that
is contrary to Vadoc policy, that supposed to be a minimum
of 7hrs "per inmate" — they both laughed and responded
"since when have you known Wallens Ridge to care about
policy". I tried to explain that RHU/seg is required to get
4hrs out of cell time... and GP (general population) at WRSP
barely gets 3 hrs... that is egregiously unfair and spending
21 or more hrs in my cell everyday in GP is detrimental
to my mental/physical health, defendant Artrip responded that
maybe I "should go to RHU... if I wanted more Rec"



⑦

(19) 18.) In regards to this complaint relevant Vadoc policies are (operating procedures) OP 803.1, Managing offenders with Disabilities and OP 841.2 work programs, OP 830.3, Grievance Appeals and OP 730.3, Mental Health levels of services, but not limited thereto and 440.1 per (injury severity) has

(20) 19.) Plaintiff has been diagnosed as having several qualified disabilities of physical and mental impairment that substantially limits one or more major life activities, defendants refuse to put water/showers on his cell door

(21) 20.) Plaintiff is legally blind, has Mono vision, has left eye is (legally blind) with a visual acuity of 20/800 (the clinical determination of 20/800 is legal blindness). Plaintiff's right eye is "completely blind diagnosed with Optic Atrophy, retina detachment and cataracts. See Exhibit 2 a/b

(22) 21.) Plaintiff also has a digestive disorder and requires an ostomy/colostomy prosthesis as a result from Twenty One (21) abdominal surgeries for attempts for ingesting metal foreign objects since 2014

(23) 22.) Plaintiff is also diagnosed with several psychological disorders to include, but not limited to: Post Traumatic Stress Disorder, Depression, Anxiety and Personality Disorders with an extensive history of suicidality and serious self-injury requiring One Hundred-Thirtysix (136) emergency hospital admissions at 26 different hospitals across Virginia since 2014

(24) 23.) Plaintiff has filed a "request for reasonable accommodations" multiple times: Nov. 23, 2020, April 8, 2021, May 12, 2021 (attached) exhibit 6-F

(25) 24.) On May 12, 2021, two ADA coordinators Mr. Santos met with medical authority, reviewed plaintiff's medical charts, agreeing to grant plaintiff's accommodations request, but none were ever placed except to remove two light bulbs from a five (5) bulb fixture in cell — No other requested Vadoc pre-set/approved reasonable accommodations (for visually impaired prisoners) have been met to current day. See Exhibit 4

(8)

26.) Plaintiff filed numerous grievances on this issue and spoke repeatedly to defendants Warden Davis, ADA coordinator Coughlin "true to form" complaining of these refusal and were repeatedly told "we believe you can see just fine", grievances were answered by WVSP grievance office as "Refusing intake" filing with A reason of "request for services", stating ADA accommodations will be met and provided" on 8-12-21 see exhibit 5 (and how they again refused and retracted appeal Exb 7)

27.) Plaintiff further spoke with defendant Coughlin on 9-28-21 complaining again of these blatant discrimination and indifference and he stated plaintiff needs to see eye doctor because "no requests for accommodations has been received". This were said with A grin sarcastically, since he knows Plaintiff filed several. see exhibit 3 and 7

28.) Plaintiff continued to meet with the medical provider Dr. Mullins and on (?) unknown specific date in february and again in march and may 2022 the Doctor ordered for "all ADA accommodations per approved by Vader for the visually impaired to be provided." Also in line

29.) Plaintiff had appointment with optometrist in April - May 2022 and noted visual acuity in left eye to have been exacerbated from 20/90 to 20/300 since 2019 evaluation at Pocahontas case. etc. again seen July 1 2022

30.) Plaintiff has requested from all defendants to coordinate communication with Vader inadequates ADA supervisor (from Ross Dublin) as Plaintiff has written to him numerous times but excuses no responses, however, this was repeatedly denied too, that faulty/friends call him too and recall defendant Dublin

31.) on feb. 25 2022 A letter/email from "Rights Behind Bars" Attorney, Oren Nimni, was sent to defendant Davis and other Vader defendants laying out the concerns of the complaints herein this action (attached) exh. L a/n

32.) Plaintiff was denied appropriate housing (i.e. SAM unit/pod) five inmates with mental health/medical disabilities from feb. 2021 through march 2022 until he was assaulted (attempted murder/strangulation) by A BLOODS' Gang member on Jan 21, 2022, despite incessant pleas to be appropriately housed or transferred and grievances and inquiries from Rights Behind Bars Attorneys see Exbl/Ft 9b/

33.) Plaintiff has also been discriminated against by defendants Stallard and McCroy for being denied work programs (job assignment) despite numerous attempts and application submissions, being told by these defendants that Plaintiff will not be allowed to have any work assignments while housed in their building because they "don't like" the plaintiff and "do not trust" his "type" and because he files "too many grievances".

34.) Plaintiff filed grievances explaining that defendants only allow those(s) inmates to perform all work duties (e.g. fridges, barber, showerman, sanitation worker, recreation, etc.) when Vader policy only allows one trist/duty to be assigned to each worker with more than two(2) allotted positions available Plaintiff was forced to drop everything or a knife would be found in his cell by

(9)

After they

defendants responded verbally to plaintiff it was because "they're the only three inmates they like and did bathe without loud complaint" or else"

(35) Plaintiff grieved that (and complained verbally) OP 841.2, I, sec. K, set states "Participation in work programs to a better future and offender's evaluation for goodtimes awards and a requirement by Va. regulations Code of Va. §53.1-202.3; §53.1-38.1" and that his current audit of his goodtimes evaluation on Nov 2021 ssd his must meet treatment objectives of "obtain/maintain institutional employment" as it will affect his goodtimes and push back his release date as it previously did in 2021 and will in 2022 November again. Plaintiff told "withdrawal as a knife would be fond which cell"

(36) Defendants all at WRSP treat work programs as a "privilege" subject to "discriminatory function" for assignments, rather than under policy and Code of Va statute mandatory requirement as part of an inmates "re-entry" rehabilitation efforts.

(37) Defendant Townsend repeatedly refuses to respond to any of the request to meet with plaintiff and tells him she doesn't have time for him when he sees her passing by.

(38) Defendant Townsend refuses to allow plaintiff adequate colostomy supplies ordered by the Physician Dr. Mullens; repeatedly telling plaintiff he will only receive the amount she provides his excess to a function forcing him to re-use soiled bags and wafers. She refuses to adhere to ADA reasonable accommodation orders & interfering with Dr. Mullens recommendations. She refuses to post ADA notes on plaintiff's door per policy

(39) Plaintiff has grieved and verbally requested adequate mental health treatment for severe long standing suicidality and PTSD, seeking and prescribed weekly therapy sessions for at least one hour preferred with a "Licensed Professional Counselor" recommended by WRSP Psychiatrist Dr. McDuffie; however, WRSP does not employ such skilled staff, mostly untrained "Comp-Adult" (Qualified Mental Health Professionals) that are not recognized by Va Dept of Health Professions as a "Licensed therapist"; nor does WRSP allow for individual therapy sessions, so plaintiff repeatedly ask defendants for a transfer to facility with treatment options

(40) WRSP only allows "evaluation/risk assessments of self-harm or potential suicide and then "precautionary" measures (i.e. stripped cell) as the full extent of their "outpatient" services, they have no provision for mental health "treatment", except psychotropic prescribed medication.

(41) Plaintiff has spoken with defendant Light numerous times to initiate a mental health referral transfer (to Greensville Mental health Unit) for residential services and has been denied repeatedly by her "higher ups" (these defendants named in supervisory positions) she says they would have her job if Plaintiff then asked Defendant Townsend for ADA transfer & mentally impaired unit at GCC, she refused.



(10)

(42) ☐.) WRSP is a security level five (SL-5) "supermax" facility housing inmates with the most serious behavioral and management problems (i.e., violent offenders) maintaining the highest level of security by imposing many restrictions (e.g., limited movements, attack K-9 dogs, firearms, little contact between inmates and staff, little recreation — typical restraint is a minimum of three (3) hours out-of-cell activity — although Vadoc policy. See Exb.18 a-f for SL-5 facility is a "minimum" of Seven (7) hours out of cell time daily

(43) ☐.) Plaintiff has exhaustively complained that the harsh restrictions and severe isolation and violent conditions at WRSP has exacerbated his mental illnesses and precariously causing his suicidality and indeed has moved him to attempt suicide at WRSP several times in the past two years &

(44) ☐.) Plaintiff previously spent over a decade at WRCL's sister facility Red Onion State prison (ROSP) in long-term solitary confinement "without" any history of violence or assaultive behavior due solely to his maladaptive symptoms of PTSD and depression from such extremes of isolation and sensory abridged/deprivation and psychological tortures.

(45) ☐.) Plaintiff currently meets all Vadoc criteria for an interview review of his security level which if completed would score him at a level 3 as he hasn't had any institutional disciplinary offenses for more than a year, has completed all required/available programs, however defendants ☐☐☐ carics refuse to make available an interview review to accommodate his mental and medical needs at a lower security level facility as Vadoc policy provides.

(46) ☐.) WRSP cannot accommodate plaintiff's mental health treatment needs and as a result will continue to exacerbate his mental illness and lead to a direct cause of his "imminent suicide" if not treated adequately and properly

(47) ☐.) Plaintiff has repeatedly expounded on that fact to defendants and they do not care and has told him repeatedly that "it is your choice"

(48) ☐.) Plaintiff has expressed to defendants their legal and custodial responsibilities to his mental and physical well-being, they respond that "you are responsible for your actions, not us, you are a manipulator"

(49) ☐.) Defendants blatantly disregard recommendations by WRSP psychiatrist for treatment so as to prevent plaintiff's future attempted suicide/death

(50) ☐.) WRSP assistant warden, J. Russell, told plaintiff he is not a security level 5 inmate, that he is more like a level 3 and "needs to be three, not at WRSP, in a face to face hearing Jan. 26, 2022

(51) ☐.) defendant McBride ~~~ , when asked by plaintiff to recommend a transfer to appropriate mental health unit for appropriate treatment such as professional therapy, etc., responded to plaintiff that he'd have to talk to "some people" (indicating defendants in supervisory positions) first because if he wants that it would "piss some people off" that had "backed those into a corner to transfer" the plaintiff



(11)

(52) 49) Defendant Davis, when plaintiff asked him about the policy providing for a interview review to transfer him so he could get adequate M.H. Treatment, in light of the recall and hand copy letter to defendant Davis from rights Behind Bars Attorney Orin Nkume, Defendant stated "I don't answer to lawyers...he cc'd it to headquarters (indicating defendants Malone and Madsen) and they said the same thing" see exh. 1a/b

(53) 50) Exhibit 21 a-d is a letter plaintiff wrote to defendant Davis and mailed copies to Defendants Clarke, Robinson, Malone, Deibin, Madsen, and hand delivered a copy to defendant Lowell, Light and McDuffie: his issue this was a suicide notice, as plaintiff clearly expressed his imminent suicide intent. Each defendant responded similarly by teasing plaintiff of he kills himself, it will not hurt anyone but him, it is his choice.

(54) 51) Defendant McDuffie told plaintiff that defendant Malone has "been putting their ducks in order" in the event he kills himself. He has expressed to plaintiff on several occasions that how each defendant "feels" about the plaintiff "precludes necessary treatment and placement at Restorative mental healthcare unit." Plaintiff requested he sign an affidavit to that and he said he'd "answer questions that lawyers ask"

(55) 52) That discussion was in regard to law clearly established in a case he was a defendant with also defendant Clarke and Robinson; i.e. Deprado V. Clarke, 884 F.3d 481"

(56) 53) Defendant Madsen has written to plaintiff several times affirming his position as the Senior Psych. Assoc of Central Classification has full authority on plaintiff's need

(12)

for ADA reasonable accommodations of constitutionally protected rights to equal treatment and providing adequate mental health treatment; however, he acknowledges his Authority, but espouses a secondary role to 18th challenge other defendant's disapproval because he sees this MHU placement as an "opportunity" rather than a mental health "treatment right" or "required care" per Vador policy, state and federal laws. He blatantly points out expressly that misbehavior (regardless of precipitated by mental illness as in his refusing to plaintiffs self-injuries/surgeries/cutting/swallowing behaviors) will not be tolerated and "precludes" any placement/ transfer to A mental health unit for treatment.

(57) Defendant Robinson and Lovell have met with plaintiff on one or more occasions (questionable dates but appex. once in Nov-Dec 2021 by a note telecom with defendant Davis and Robinson together; and 3-4 occasions between Feb-2021 and present day with defendant Lovell) specifically on 3-10-21 plaintiff spoke face-to-face with defendants Davis [carrico] and Lovell complaining of all claims raised herein, even to warn them he was suicidal and going to kill himself at VACP due to inadequate treatment and harsh conditions of lockdown similar to solitary at lose that has exacerbated his mental illnesses and caused his PTSD to worsen. They laughed at plaintiff and told him he's tired killing himself hundreds of times and it ain't worked, that he is the boy that cried wolf".

(58) Defendant Clark met with plaintiff face to face

(13)

during his trip to WRSP from Richmond headquarters (appx 4/22)
plaintiff briefly complained to him about all claims herein
expanding on the subject of ADA and the necessary and
urgent need for adequate treatment before plaintiff inds up
committing suicide, defendant Clarke acknowledged that "it's
true, the surgeons at MCV (hospital) has said you can't
have corrective surgery or it will kill you"; plaintiff
requested he do something to ensure he be transferred back
to GCC-MHU for treatment and defendant Clarke pointed
at defendant Davis and suggested that "there's your
surgeon, talk to him".

(59) Plaintiff asked if he remembers the "Depada" case
and if it set a precedent legally binding precedent in Va.
to provide adequate mental healthcare and he told plaintiff
"We won that case, you wouldn't be here if you'd stop
submitting stuff you know will kill you"

(60) Plaintiff further asked defendant Clarke about the "jpay"
email he and defendant Robinson sent to Vador entire
population concerning new goodtime legislation going into
effect July 1 2022, specifically Text of Va§53.1-202.3 and §53.1-
32.1 that authorizes op 841.2 (1)(B)(1), (participation in work
programs as key factor in inmate goodtime awards), plaintiff told
him his being discriminated against by defendants Stallard,
Church and McCray explaining the job denials laid out to
(herein paragraphs 40-44) defendants to no avail, plaintiff





(14)

voiced concern that he was hired for A JB9N C-Bldg but
defendant Clevela Refused to acknowledge the application and
denied plaintiff the position and pay for 30 days of
work imposed by Defendant Santos supervisors [see exhibits 15(a-e)]
Defendant Clevela rudely ignored any further dialogue
with Plaintiff and walked off

(61)    defendant Shepards mistreuments other than her
official role as A Asst. Regional supervisor is incidtore in detail
on facts set out in exhibits 19(a-e)

(62)    defendant Mayse assureed and expended ignorantly
in A deliberately undifferent disregard for health as he
exercized extreme pesjudics in his biased assertion that
his subordinate employee defendant Shepard was in no way
inappropriate and plaintiffs complaints were completely
without merit as he wrote on exhibits 19(b-e). He
gave no consideration in plaintiffs complaints siding
biasedly with defendant Shepard in his word over
plaintiffs and nothing else.

(63)    defendant Mayse has the official Responsibility
to ensure all prisons in the western region afford/provide
all inmates with mental illness within adequate treatment
as he's the Mental health clinical supervisor.

(64)    on 7/1/22 wrsp optometrist saw and evaluated
Plaintiffs eye conditioned asserting he has A Neurological
diagnostic disorder in his only working eye and A minute
without vision acuity of 20/400, double this legally blind !

(15)

of baseline of 20/200, again attempting to get defendant Townsend to help plaintiff reasonable accommodation in conjunction with defendant Caughran.

(65) Other inmates with partial or legal blindness most are housed at Greensville Correctional Center in a specialized unit designed for visually and hearing impaired and all visually impaired inmates are entitled to specific reasonable accommodation that aid in their functioning of daily living and aid in not exacerbating their disability without it, to name a few: printed windows in cell, removal of bulbs, a large TV with a remote to control color/contrast/brightness and other visual aid functions, a watch/clock that "speaks" the time, magnification devices for TV/books etc., personal inmate aid for mobility/reading/writing assistance, a large jpc music/mail device, listening devices, special transitional lenses for glasses, etc and not limited thereto, all are already VDoc approved

(66) Plaintiff is receiving none of these, simply 1 bulb removed out of 5, still has 4 bulbs that remain on 24 hrs a day merely dim at night yet still bright enough to read/ write by. Defendant Davis and Caughran tells plaintiff he is getting all he need in accommodations and refuse to coordinate a telecom meeting with ADA supervisor defendant Durbin.

(67) Defendants Robinson, Malone and Madsen and Davis have personally hindered plaintiff placement at Greensville

(16)

at GCC usually impaired unit or MHU also not done three, dispite plaintiff consistant Request.

(68) All defendants have failed to act to cure any of the unconstitutional wrongs, or to provide for plaintiff's Rights under federal statutory Acts as laid out here in this detailed complaint.

(69) Defendant McDuffie's Recommendation for Referral to GRCC-MHU to provide for me to Receive adequate M.H treatment was denied by GRCC-MHU director who has only A "Masters Degree" in social work — not A Ph.D as defendant McDuffie is A licensed MD and Psychiatrist

(70) Defendant Madson, as the Senior psychology associate at Central Classification has the duty to either direct the MHU to accept my Referral or find another suitable placement to provide the same/equivilent M.H treatment defendant McDuffie Recommended; however, he did nothing except to have me stay at WRSP with no treatment

(71) Defendant Clark, Robinson, Malone, Madson, Moyer and the VaDOC are aware of my Risk of suicide and history of mental illness of PTSD from prolonged long-term solitary confinement/isolation (Eleven years in ROSP solitary), yet Refuse to provide for adequate "treatment" in its prisons, esp WRSP/ROSP. Continuously Referring to "access to services" interchangably with "treatment" knowing WRSP/ROSP and all other facilities (other than MCTC and GRCC-MHU) have no qualified Mental Health Clinicians

(17)

i.e., licensed clinical therapist to treat specific mental health disorders as PTSD.

(72) "Access to services/outpatient" consist as merely a "psychology associate" (A fancy trumped up euphemism for a person with a masters degree in typically social work/education — not the Virginia department of health professions and Virginia department behavioral health developmental services requirements to treat mental illness)... who comes to speak with you briefly apprx. 5-10 min. to assess your complaint and offer you to see a psychiatrist and/or be placed on suicide-precautions naked in a cell property-less in which you have to lie that you "feel better" to get your clothes and property back and return to population from segregation/suicide precautions. He/she may offer you some wordsearch or sudoku puzzles.

(73) The psychiatrist (Defendant Mr. Ohatis) can prescribe medication and/or refer you to an acute mental health facility (MCTC) to force medicate you, or to a MHU.

(74) Which forces the question what "services" are being offered or are "available" to TREAT the plaintiffs mental health disorder commensurate to his psychiatrists recommendations/orders?

(75) Defendants and Vadoc attempt to fool this court that the plaintiff is being "treated" by having access to mental health services

(76) The plaintiff as being denied the "access" to said services, i.e., "TREATMENT" by licensed therapist to treat PTSD.

(77) Defendant Chadwick Dotson (previously Harold Clarke) and defendant Artrip (previously Warden Davis) are responsible for the health, safety and mental and physical overall wellbeing in accordance to all applicable state/federal laws and statutes and the ADA and Rehabilitation Act and the 14th Amend. of the U.S. Const. that provides for equal protection: As a legal status under the 13th Amend. and the state covered, fully insured inmates by blue cross blue shield-Anthem Health Insurance contract with the VADOC at 95 a requirement that I be complete with any and all medical needs met with licensed professionals to kindge treatment for any recommendations by any other licensed professionals as the Vadoc has accrued the premium health coverage in the Anthem Health Insurance policy and contract in conjunction to the allocation of federal/state funds allotted per inmate

(78) Defendants Dotson and Artrip and Townsend are committing ~~state~~ insurance fraud and breach of contract by denying plaintiff a medical Doctors psychiatrist recommendations while accepting funds allocated through Anthem corporation contract policies the inmates coverages

(79) Defendant Townsend has consistently refused the plaintiff access to his medical records, she has even conspired to destroy records that I've requested that are demonstrative of this

(18)

case and the issues laid out herein:

(80) I was transferred from River North Corr.Ctr back to WRSP on Sept. 25 2023 and placed in general population amongst A majority of gang members of. 80 plus Inmates despite the known risk posed to me with my serious mental illness and recent suicide attempts.

(81) I spoke with defendant Artrip in passing, to be housed in A safer environment and he stated he hasn't got time for me, I spoke with defendant Light and McDuffie requesting A lateral transfer to SX1 SAM unit and/or other avenues Referral attempt to GRCC-MHU for treatment, Light told me there will not be any "Negotiations" with me from the administration.

(82) On Oct 2nd I was assaulted by 4 C/os Caudill and Caudill and John Doe during evening sunning 6:30pm RLC where I was told to tuck in my shirt, I alerted staff that I had A medical disability and A profile/pass DR.ORDER to Not tuck in my shirt due to A colostomy bag. These 3 C/os made me show them my ostomy in the middle of the pod in front of all inmates watching in violation of many ADA/medical privacy Acts, etc. I was told I was to return to my cell, losing my RLC for not tucking in my shirt. I asked to speak with A supervisor, these 3 C/os took me into the vestibule and began to forcibly put handcuffs on me behind-my-back despite me exclaiming that I have A "Cuff-in-front" medical/Drs. ORDER, They then slammed me into the wall, cuffed me behind my back, forced me to my knees despite my protest that I have A "No kneel" Dr order too. I was then slammed on my face and stomach bursting my colostomy bag all over me. I was placed in segregation/solitary



(19)

for 4 days and forced to accept A penalty offer of $14 fine for 2 disobeying an order charges so as to go back to population.

(83) On Tuesday 10/6/23 IHO King saw me walking across the yard back to A-bldg and said "my spouse, ... fuck 'em, I'ma have some Bloods or ARYANS fuck You up as soon as you start crying wolf with that fake suicide Manipulation.

(84) Yesterday, 10/17 Mr. King came into A-6 and called me A bitch, A snitch and A child molester in front of other inmates in attempts to create violence against me. He stated I'll get anyone A job outside the bldg. that fucks this "piece of shit up"

(85) Mr. King was the Chief of Security /Major here at WRSP and was moved to ROSP and was demoted due to an egregious amount of facts of unethical/unprofessional conduct. He is now back at WRSP as A Disciplinary hearings officer. Dispite his known prejudicial and unethical behavior. This speaks volumes to the Vadoc turning A blind eye to the Racist, hostile culture and climate and use of excessive force in the Remote supremacy prisons in Southwest Va. WRSP/ROSP/RNCC/KMCC

(86) On 10/23/23 I spoke to defendant Warden Artrip and UM Santos to ask why they are allowing general population (GP) inmates to spend 21 plus hours A day in their cells during normal operations] when Vadoc OP 440.1 (privileges by security level) states "offenders housed/assigned to A security level 5 are to receive A [minimum] of 7 hours of out of cell activities, since 9/25/23 when I returned to WRSP I have not had more than 3 hours per day out of my cell during all normal operations. Warden Artrip and UM Santos told me that they get away with it because they calculate the "combined" total out of cell time between the top and bottom tiers. Top and bottom tiers come out seperately. if the top gets out for 3½ hours and the bottom gets out for 3½ hours WRSP documents that as having allowed everyone 7 hours out of cell activities.

(87) I complained to Warden Artrip and UM Santos that Vadoc OP 440.1 states "offenders" as in each individual inmate must receive A minimum of 7 hours, ... They responded that as long as their records document that they pulled 7 hours of RSC then that's what headquarters knows and since when did I know WRSP to care about policy.

(88) I told Defendant Artrip and Santos that spending 21 plus hours A day in my cell in GP is detrimental to my mental and physical well-being and exacerbates my mental illness of PTSD from spending over A decade in long-term solitary isolaton confinement at WRSP/ROSP and that I am classified as SMI (seriously mental illness) with A "2S MHcode"

(89) I pointed out to them that RHU/segregation is required to give inmates a minimum of 4 hours out of their cells

(90) T. so for inmates in GP to recieve LESS time of out of cell activities, esp. for anyone with a mental illness, is an EGREGIOUS violation of Policy, not to mention "inmate's constitutional Rights

(91) Defendant Warden Artrip and Santos told me that I should consider going to RHU (seg) thru.

_____

Wherefore, I conclude with the following
" Claims for Relief"

For defendants Artrip, Santos to subjectively and strategically house inmates (esp. SMI classified) in GP for 20/21 plus hours a day in their cells in spite of a policy requiring a (minimum) of 7 hours (SL-5) out of cell activities during normal operations and subjectively and strategically combining out of cell time between 2 tiers to manipulate records/documentation falsely and maliceously violates the 8th Amend of the US Const. against cruel and unusual punishment

For Defendant Moden to hold the official position responsible for the housing/classification assignments in and out of mental health units and to not comply or make any effort to satisfy a Psychiatrist's order/Recommendations to transfer plaintiff to a facility (GREE-MHU) that can accommodate one-on-one therapy for PTSD treatment violates the 8th Amend. of the US Const. and the ADA/Rehab act and 14th Amend. of the US. Const. Also defendant Malone, clarke/Dodson, Robinson, Moyer and Shupeal and lovell are culpable/liable in their official capacity for the forementioned cause of actions and relief

For Defendant Lovell to interfere with my SMI unit classification by demanding my removal in order to be transfered to GP knowing my risk and MH code and suicidal history and medical disabilities and overall vunerability violates the 8th Amend

(21)

continued
Claims for Relief

...of the US Const of cruel & unusual punishment in which
the relief is sought...

...on the failures and action/inactions stated in the
complaint by not providing adequate mental health treatment
recommended by A Psychiatrist that complies with the ADA
42 USC §12101 et seq. and 29 USC § 794 sec 504 of the Rehab Act
and the 14th and 8th Amend. of the US Const. Was violated
by Subjective and Objective standards by defendants Clarke, Dotson,
D. Robinson, Malone, Durbin, Madsen, Lovell, Shepard, Moyer, Davis,
Artrip, Carico, , Coughron, Townsend, Santos, Light, Stallard, Anderson
Bateman, Hamm, Haynes, Roop, Rosas, Ahmer, Spangler, Sturdivant

For Violation of State Tort of assault (Cov § 18.2-57) Relief
is sought against S/os Caudill, Cauldwell and John Doe

For denying Requested ADA accommodations in relation to
the plaintiffs visual disability defendants Hamm, Santos, Coughron,
Artrip, Davis, Stallard, D. Robinson, Clarke, Dotson, Durbin, Carico,
Townsend, Hawks, Robinson, Taylor, Rippy, Bateman, Anderson have
violated the ADA, Rehab Act and 8th & 14th Amendments of the US Const.

For forcing the plaintiff to Reuse soiled colostomy bags and
go without any colostomy supplies and have exposed stoma, defendants
Townsend, Taylor, Hawks, Robinson and Rippy violated the ADA, Rehab
Act and 14th & 8th Amend. of the US Const.

For defendants Clarke/Dotson, D. Robinson, Davis/Artrip, Anderson
Bateman, Lovell, Madsen, Carico, Santos, Stallard, Church, McCray, Light,
McDuffie Madsen, Malone, Shepard and Moyer to properly deny and
their failure to safely house plaintiff in accordance with ADA/Rehab Act
Vador policy commensurate to VAs medical/mental health needs

(22)

and purposely exposing him to threats/assaults of known
gang members "hits" violate the ADA/Rehab Act and 8th ;
14th Amend of the US Const. . (Continued p. 23)

(Continued p. 23)

㉓

Continued
Claims for Relief

The failure of ~~custodial~~ Custodial defendants playing a significant role in Dotson/Clarke, Anderson, Artrip, Davis their individual/personal action or inaction and in their official responsibilities to provide for the plaintiffs rights under 29 USC §794, section 504 of the Rehabilitation Act and 42 USC §12101 et seq. of the Americans with Disabilities Act of reasonable accommodations, his health, safety and equal protection against discrimination entitles the plaintiff to relief; and

The actions and inactions of ~~these~~ defendants for their personal roles and failures in the official duties in forcing the plaintiff to work without pay (defendant Surber, Church) and forcing him to wear unsanitary colostomy bags denying reasonable accommodations and Doctors orders (defendants Taylor, Hawks / Toliver) and adequate mental health treatment being denied knowing the plaintiff's extensive history of mental illness (defendants Clarke, Robinson, Dotson Mabbott, Deblin, Madison, Lindl, Shepard, Meyer, Davis, Carico, Crighton, McKittee and Light) constitutes deliberate indifference to his serious medical need and cruel and unusual punishment; and violates the 8th amend of the US constitution

The failure of defendants McCroy, Stallard and Church, Surber to provide for state created liberty interest in loss of good time by not permitting work program participation violates the 14th amendment of the US const. and against discrimination of the Rehabilitation Act and ADA

All defendants fail to cure these federal const/statute violations of the ADA/Rehabilitation Act.

(24)

<u>Relief Requested</u>

WHEREFORE, plaintiff request that this court grant the following relief:

A. Issue A declaratory judgment stating that:

1.) The actions and/or nonactions in question by the defendants violated and continue to violate the plaintiff's rights under state/federal constitutions and statutes

B. Issue an injunction ordering defendants or their agents to:

1.) conduct an interim ~~security/custom~~ review reclassify the plaintiff to ~~an appropriate~~ security level and restore goodtime lost

2.) complete & immediate health transfer & referral for immediate appropriate placement/housing at A ~~~~ mental health unit for long-term residential treatment pursuant to Va Code §8.01-622.1(B)

3.) certify and provide all request for reasonable accommodations approved by the Vadoc ADA coordinator at Headquarters for the qualified disabilities of plaintiff and provide for the plaintiff A telecommunication appointment with the ~~~~ ADA coordinator supervisor there immediately to ensure continued accommodations

C. Award compensatory and punitive damages in the following amounts:

1.) $10,000 jointly and severally against defendants for the physical and emotional injuries sustained from plaintiff suicide attempts and defendants actions and nonactions laid out within this complaint and for the punishment, including deprivation of liberty and anxiety and cruel and unusual punishment and "continued harm" ~~~~

D. Grant such other relief as it may appear that plaintiff is entitled

Plaintiff swears under penalty of perjury, pursuant to USC §1746 and Va. Code §8.01-280, That the foregoing is true and correct.

~~~~
Respectfully submitted,                    Oct. 25, 2023
Jacob Strause, #1101414
~~~~
W.O.S.P., P.o Box 759
Big Stone Gap, Va. 24219

CREED SROUSE, 1101441
Wallns Ridge State Prison
PO Box 759
Big Stone Gap, Va. 24219

Clerk
US District
Western Dis
210 Franklin
Roanoke

Received
Mailroom

OCT 26 2023

Wallens Ridge
State Prison

VIRGIN
HAS N
ITE
DOES

LEGAL
MAIL



FIRST-CLASS

US POSTAGE **AND PITNEY BOWES**

ZIP 24219 **$ 002.31⁰**
02 7W
0008027035 OCT 26 2023

J Court

trict

Rd, NW Suite 540

, Va. 24011

IA DEPARTMENT OF CORRECTION
NEITHER CENSORED OR INSPECTED
THEREFORE, THE DEPARTMENT
NOT ASSUME ANY RESPONSIBILITY
FOR ITS CONTENTS